**Cleverly P. LOCKHART, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 34A05–9511–CR–432.**

Court of Appeals of Indiana.

Oct. 7, 1996.

William C. Menges, Jr., Kokomo, for Appellant-Defendant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee-Plaintiff.

1. Ind.Code § 35–42–4–3.

## OPINION

SHARPNACK, Chief Judge.

Cleverly P. Lockhart appeals his convictions for one count of child molesting,[1] a class C felony, and three counts of child molesting, all class B felonies. Lockhart raises six issues for our review which we restate as:

(1) whether Lockhart was deprived of the right to an early trial;

(2) whether the trial court properly denied Lockhart's request to act as co-counsel of his defense;

(3) whether the trial court properly excluded evidence of Lockhart's medical record;

(4) whether the trial court properly admitted a handwriting exemplar into evidence;

(5) whether the evidence was sufficient to support the class C felony conviction; and

(6) whether the sentence was reasonable.

We affirm in part, reverse in part, and remand.

The facts most favorable to the judgment follow. In November of 1993, Lockhart moved into the house of his friend, Michelle Frazier. At first, Lockhart slept on a couch, but eventually began sleeping in the bedroom of Frazier's eleven year old son, J.R. Lockhart developed a close father-son relationship with J.R.

In January of 1994, while Lockhart and J.R. sat on the floor under a blanket and watched television, Lockhart reached over and placed his hand inside J.R.'s underwear. Lockhart rubbed J.R.'s penis for several minutes.

A couple of weeks later, Lockhart went into J.R.'s bedroom and locked the door. He told J.R. about oral sex and then pulled J.R.'s pants down. Lockhart placed his mouth on J.R.'s penis for several minutes.

One month later, Lockhart again entered J.R.'s bedroom and locked the door. He performed oral sex on J.R. and forced J.R. to perform oral sex on him. Afterwards, Lock-

hart placed his penis into a sock and masturbated until he ejaculated.

In March of 1994, Lockhart became angry with J.R. for not completing a household chore. Lockhart spanked J.R. and ordered him to go to his bedroom. Lockhart later went to J.R.'s bedroom to apologize. Lockhart told J.R. "how to make love to a guy" and then "french-kissed" J.R. Record, p. 448. Lockhart kissed J.R. all over his body and put his mouth on J.R.'s penis. Lockhart moved out of the house later that month. Before leaving, Lockhart told J.R. that if J.R. ever decided he was homosexual, he should contact Lockhart.

Approximately two weeks later, J.R. told his mother about the molestations. Frazier immediately reported the incidents to Child Protective Services.

On June 28, 1994, the State charged Lockhart with one count of child molesting as a class C felony and three counts of child molesting, as class B felonies. After a trial by jury on July 25, 1995, Lockhart was found guilty on all counts. Later, the trial court sentenced him to eight years for the class C felony conviction and twenty years for each class B felony conviction, to be served consecutively. However, the trial court reduced the total sentence to thirty years.

## I.

■ The first issue for our review is whether the trial court deprived Lockhart of his right to an early trial. Our criminal rules allow an accused to be discharged because of the State's delay in bringing the case to trial. The applicable rule provides as follows:

"(B)(1) *Defendant in Jail—Motion for Early Trial.* If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calender days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calender days because of the congestion of the court calender...."

Ind.Crim. Rule 4(B). Lockhart argues that his conviction should be reversed and he should be discharged because the trial was held beyond the seventy day period. However, a defendant may not move for a discharge for the first time on appeal. *Sholar v. State,* 626 N.E.2d 547, 549 (Ind.Ct.App.1993). The issue is waived when the defendant fails to make a motion to discharge prior to trial. *Buza v. State,* 529 N.E.2d 334, 337 (Ind. 1988). Because Lockhart did not move for discharge at the time the trial court set the date outside the seventy day period, he waived the right to appeal the issue. *See id.*

■ Even assuming that Lockhart did not waive the issue, his right to an early trial was not denied. Pursuant to the rule, the trial court may, on its own motion, continue a trial outside of the seventy day period because of court congestion. Crim. R. 4(B)(1). The court calender may be congested by a variety of circumstances, including the unavailability of counsel. *Loyd v. State,* 272 Ind. 404, 398 N.E.2d 1260, 1265 (1980), *reh'g denied, cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. The reasonableness of the delay must be judged in the context of the circumstances, and the trial court's decision will not be disturbed absent an abuse of discretion. *Sholar,* 626 N.E.2d at 549.

Here, Lockhart filed a motion for early trial on April 13, 1995. The trial court initially scheduled a trial for June 6, 1995. On May 23, 1995, the trial court held a pre-trial conference, where defense counsel indicated that he had a conflict with the trial date because he had a trial scheduled to begin on June 5, 1995, and that he did not believe the trial would be finished by June 6th. Defense counsel requested that the trial court continue the trial until the following week.

The trial court, however, noted that it had three other trials commencing on June 13, 1995. The deputy prosecutor mentioned that she had a trial commencing on June 16, 1995. As a result, the trial court indicated that it would set the matter for a two to three day trial beginning on July 18, 1995. Defense counsel objected and stated that he could begin Lockhart's trial on June 7, 1995, because his other trial would only take two

days. Defense counsel's other trial involved a charge of conspiracy to commit murder. A deputy prosecutor present for the State estimated that a conspiracy to commit murder case would take a minimum of three days to complete.

Based on this information, the trial court concluded that "it is highly doubtful that Defendant's counsel will be free to try this cause on June 7." Record, p. 7. The trial court then continued the cause until July 25, 1995. Lockhart argues that the trial court erred because it "based its determination of the likelihood of the availability of defense counsel, solely on the speculation of two deputy prosecuting attorneys, not involved in the potentially conflicting case." Appellant's brief, p. 8. Aside from this allegation, Lockhart fails to provide a developed argument or citation to authority in support of his contention that the trial court abused its discretion by taking the prosecutor's opinions into consideration.

The trial court considered the likelihood of defense counsel completing the trial and the impact that defense counsel's possible unavailability would have on the State and on the court. Given the fact that the conflicting trial involved a conspiracy for murder charge rather than a misdemeanor charge, we cannot say that the court abused its discretion in finding that defense counsel would be unavailable and for setting the trial date outside of the seventy day period because of court congestion. *See Sholar*, 626 N.E.2d at 549.

## II.

The second issue for our review is whether the trial court properly denied Lockhart's motion to act as co-counsel in his defense. Because Lockhart asked to represent himself while also benefitting from the assistance of court-appointed counsel, his motion was a request for hybrid representation. *See*

**2.** The Indiana Constitution provides in part that "[i]n all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, ... to be heard by himself and counsel...." IND. CONST. art. 1, § 13.

**3.** After conducting our own research, we found only one case which held that the *Indiana* Con-

*Myers v. State*, 510 N.E.2d 1360, 1363 (Ind. 1987). Lockhart argues that he has an absolute right to hybrid representation under the Indiana Constitution.[2]

Both the United States and Indiana Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. CONST. amend. VI; IND. CONST. art. 1, § 13; *see Boesel v. State*, 596 N.E.2d 261, 262 (Ind.Ct.App.1992). Correlative to the right to counsel is the right of a criminal defendant to act *pro se*. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *Carter v. State*, 512 N.E.2d 158, 162 (Ind.1987).

Our supreme court, however, has repeatedly refused to recognize a constitutional right to hybrid representation which is the right to proceed *pro se* and to be represented by counsel at the same time. *Carter*, 512 N.E.2d at 162; *Myers*, 510 N.E.2d at 1363; *Averhart v. State*, 470 N.E.2d 666, 689 (Ind.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323; *Houze v. State*, 441 N.E.2d 1369, 1371–1372 (Ind.1982); *Bradberry v. State*, 266 Ind. 530, 537, 364 N.E.2d 1183, 1187 (1977). Rather, the court has held that the decision of whether to grant a motion for hybrid representation is within the sound discretion of the trial court; we review that determination for an abuse of discretion. *Myers*, 510 N.E.2d at 1360. Further, where counsel is competent, the trial court may deny the motion for hybrid representation. *Wallace v. State*, 553 N.E.2d 456, 460 (Ind.1990), *cert. denied*, 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991).

Lockhart recognizes the established precedent above, but argues that those cases are primarily based upon the sixth amendment of the federal constitution. As such, he sets forth the following argument:

"The one thing that all of these cases (other than *Carter* )[3] have in common is

stitution does not guarantee the right to hybrid counsel, that case being *Carter*, 512 N.E.2d at 162. There the supreme court held that "[a]lthough an accused has the constitutional right to represent himself or be represented by counsel, neither the federal nor the state constitution accords him the right to do both at once. *McKas-*

their reliance on the Sixth Amendment alone. Thus, the true holding of these cases must be considered to be that the Sixth Amendment to the Constitution of the United States does not impart a right to hybrid representation.

However, the Indiana Constitution Article 1, Section 13, differs from the Sixth Amendment.... Because the Indiana Constitution allows an accused to by [sic] heard by himself *and* counsel, it is submitted that an accused, in Indiana, has greater rights than those established by the federal Constitution, and has an absolute right to act as co-counsel, in any trial or hearing." [4]

Appellant's brief, p. 10 (original emphasis).

However, we find that Lockhart has not provided a persuasive argument to contravene the existing precedent by our supreme court. Further, the position repeatedly taken by our highest court is consistent with other jurisdictions which have examined similar constitutional provisions. For example, despite a constitutional provision giving an accused the right, "to appear and defend, in person and by counsel ...," Mo. Const. art. 1, § 18(a), such provision has not been interpreted so as to grant the accused the right to hybrid representation. *State v. Wise,* 879 S.W.2d 494, 514 (Mo.1994); *State v. Burgin,* 539 S.W.2d 652, 653 (Mo.Ct.App.1976). Similarly, an accused in South Dakota is not accorded the right to hybrid representation, *State v. Thomlinson,* 78 S.D. 235, 100 N.W.2d 121, 122 (1960), notwithstanding a constitutional provision guaranteeing "the right to defend in person and by counsel...." S.D. Const. art. VI, § 7. In *State v. Easton,* 35 Or.App. 603, 582 P.2d 37, 38 (1978), the court held that it is not a matter of constitutional right to simultaneously exercise the right to appear *pro se* and the right to be represented by counsel. Oregon's constitutional provision regarding representation is virtually identical to Indiana's right to be

represented "by himself and counsel." *See* Or. Const. art. 1, § 11; *see also Miller v. State,* 86 Nev. 503, 471 P.2d 213, 215 (1970) (holding that Nevada's constitutional guarantee "to appear and defend in person, and with counsel" does not mean that a defendant is entitled to have the case presented by both himself and counsel). Thus, we will abide by established caselaw in our state and review the trial court's denial of Lockhart's motion for an abuse of discretion.

■ We find that the trial court did not abuse its discretion. This case involved four counts of child molestation against a single child victim. The victim was prepared to testify as a witness. As co-counsel, Lockhart would have been entitled to participate in the cross-examination of the victim. Given the sensitive nature of the case, the trial court acted within its discretion by denying Lockhart's request to act as co-counsel and thereby participate in the cross-examination of the victim. *Myers,* 510 N.E.2d at 1363. Furthermore, Lockhart has not alleged that counsel was incompetent. When counsel is competent, the trial court need not permit the defendant to act as co-counsel. *Wallace,* 553 N.E.2d at 460. Therefore, we hold that the trial court did not abuse its discretion in denying the motion.

### III.

■■ The third issue for our review is whether the trial court properly excluded evidence presented by Lockhart on the first day of trial in violation of the pretrial discovery order. In *Wiseheart v. State,* our supreme court set forth the purposes of a pretrial discovery order and noted the severity of excluding evidence sought to be introduced in violation of the order. *Wiseheart v. State,* 491 N.E.2d 985 (Ind.1986). Specifically, the court noted:

"The purposes of a pretrial discovery order are to enhance the accuracy and efficiency

kle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Bradberry v. State* (1977), 266 Ind. 530, 364 N.E.2d 1183." *Carter,* 512 N.E.2d at 162. However, neither *McKaskle* nor *Bradberry* refer to the right to hybrid counsel (or lack thereof) under the Indiana Constitution, and *Carter* did not include an analysis of the Indiana

Constitution in its opinion. Accordingly, it is difficult to discern the basis for the court's statement in *Carter.*

4. We note that the State failed to address this issue in its brief.

of the fact-finding process, and to prevent surprise by allowing the parties an adequate time to prepare their cases. The State's interest in the application of discovery rules is the prevention of surprise, not punishment of the defendant for mere technical errors or omissions. In accordance with these ends, the trial court should seek to apply sanctions which have minimal affect [sic] on the evidence presented at trial and the merits of the case.

\* \* \* \* \* \*

A defendant's violation of a pretrial discovery order does not *ipso facto* constitute grounds for the exclusion of testimony. The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State."

*Id.* at 990–991 (citations omitted). To fully assess the rights of both parties to a fair trial and to assess the defendant's right to present witnesses, the trial court should consider the following factors: (1) the nature of the defendant's violation and when the witness first became known to defense counsel, (2) the significance of the testimony to the defendant's case, (3) the nature of the prejudice to the State, (4) the propriety and effectiveness of less stringent sanctions to protect the parties' interests, and, (5) the prejudice to the State despite the availability and reasonableness of others sanctions. *Id.* at 991. Some of these factors may be inapplicable to a particular set of facts. *Id.* When the defendant seeks to call a previously undisclosed witness, the defendant must make an offer of proof on the nature of the evidence to aid the trial court in evaluating these factors. *Id.*

In the present case, the trial court entered a pretrial discovery order which required Lockhart to disclose the names and addresses of any potential witnesses and any medical or scientific reports relating to Lockhart's case. On December 1, 1994, the defense submitted a witness list in accordance with the trial court's order. On the first day of trial, Lockhart notified the prosecutor of his intent to admit his medical record into evidence and to call Dr. Richard Senn, his urologist, as a witness. Dr. Senn was not on the witness list, and the medical record had never been disclosed to the State. As a result, the State sought to have the previously undisclosed witness and the medical record excluded from evidence. After a hearing on July 26, 1995, the trial court granted the State's motion to exclude this evidence.

During the hearing on the State's motion to exclude, defense counsel noted that Lockhart's prior counsel had made two typographical errors on the witness list submitted on December 1, 1994, in response to the pretrial discovery motion. On the witness list originally submitted to the prosecution, there was a listing for a Richard Mosley, Lockhart's brother, who was anticipated to be called. Moseley's address was erroneously listed as 113 West Southway Boulevard. Mosely actually lives at 1809 Susex Drive, while Dr. Senn works at 113 West Southway Boulevard. Thus, defense counsel argued there was a "dual typographical error" on the witness list originally submitted to the State. Record, p. 358. He claimed he only noticed the error shortly before trial.

Defense counsel indicated that Dr. Senn would testify that he treated Lockhart for impotence. While Dr. Senn's treatment of Lockhart's impotency began after the molests were reported, defense counsel stated that the testimony would demonstrate a continuing problem beginning before the molests. In addition, defense counsel indicated that he had only received Lockhart's complete medical record on the morning of trial. The medical record contained a notation that Lockhart had been impotent from the time he began taking a drug called Escalith. Defense counsel concluded that there was no intent to mislead the State and that the evidence should not be excluded.

The State responded that it would be prejudiced by the admission of the evidence first disclosed on the morning day of trial. The State further claimed it would not have time to verify the records or prepare for the cross-examination of the witness.

After reviewing the test enunciated in *Wiseheart*, the trial court found that (1) the defense had knowledge of the witness since December 1, 1994, the date in which the

defense's first witness list was submitted to the prosecution; (2) the medical report notation was not relevant unless Lockhart testified that he began taking Escalith on a particular date and, if Lockhart so testified, then the medical report was cumulative to a certain extent; (3) the State suffered substantial prejudice by the delay; and (4) the less stringent sanction of a continuance was not appropriate because J.R. was prepared to testify and a continuance could be detrimental to the child's mental health. The trial court concluded that it did not believe defense counsel had intentionally kept information from the State but that "the oversight was so substantial that it has the equivalent of bad faith in this case and ... that the substantial prejudice has resulted." Record, p. 521.

Based on our review, we find that the trial court thoroughly reviewed the factors enumerated by *Wiseheart*. While Lockhart did not challenge any of the trial court's specific factual findings underlying its decision to exclude the evidence, he claimed that once the trial court found the breach to be unintentional, it had to order a continuance. We disagree.

According to *Wiseheart*, evidence should not be excluded "unless the defendant's breach has been purposeful or intentional *or* unless substantial and irreparable prejudice would result to the State." *Id.* at 991 (emphasis added). Here, the trial court concluded both that Lockhart's oversight was "the equivalent of bad faith" and that the State would suffer substantial prejudice from any delay. Record, p. 521. Therefore, we hold that the trial court properly excluded from evidence the testimony of Dr. Senn and Lockhart's medical record.

### IV.

The fourth issue is whether the trial court properly admitted a handwriting exemplar into evidence over Lockhart's objection. During his case-in-chief, Lockhart offered into evidence Exhibits A and I, two letters allegedly written by J.R. to Lockhart. During its rebuttal, the State called Ron McGraw, a handwriting expert, to testify as to the authenticity of those letters. McGraw testified that he had examined Exhibit I and compared it to a handwriting exemplar completed by J.R. at McGraw's request. McGraw testified that the letters "were authored by two separate individuals." Record, p. 675. The State admitted the handwriting exemplar over Lockhart's objection.

On appeal, Lockhart claims the trial court erroneously admitted the handwriting exemplar into evidence in violation of Ind. Evidence Rule 901. This rule provides in part:

"(a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

\* \* \* \* \* \*

(2) *Nonexpert Opinion on Handwriting.* Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of this litigation.

(3) *Comparison by Trier or Expert Witness.* Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated."

Evid. R. 901. Lockhart argues that McGraw's comparison of Exhibit I and the handwriting exemplar violated Evid. R. 901(b)(3) because the handwriting exemplar had not been authenticated. Lockhart concludes that the admission of the evidence unduly prejudiced him.

An item is authenticated when the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(a). When evidence establishes a reasonable probability that an item is what it is claimed to be, the item is admissible. *Columbian Rope Co. v. Todd*, 631 N.E.2d 941, 945 (Ind.Ct.App.1994), *trans. dismissed.* The erroneous admission of the evidence is not reversible unless it prejudices the complaining party. *Id.*

■ To establish a foundation for the authentication of the handwriting exemplar, McGraw testified that he provided the exemplar to the prosecutor with instructions to have J.R. complete it in the prosecutor's presence. The exemplar bears a signature from a "[J.R.]" Record, p. 682. McGraw testified he later retrieved the handwriting exemplar and went to defense counsel's office to complete his analysis. McGraw's testimony is sufficient evidence to establish a reasonable probability that the handwriting exemplar is what the State claimed it to be. *See* Evid. R. 901(a). Therefore, Lockhart's challenge to the authenticity of the exemplar has no merit.

■ Moreover, even if the trial court improperly admitted the evidence, the error does not require the reversal of Lockhart's conviction for two reasons. First, the trial court admonished the jury that it could consider the exemplar "only with regard to the testimony of Mr. McGraw. You're to make no conclusion about who signed it since there's been no testimony about that." Record, p. 682. A jury is presumed to follow a court's admonishment. *See Cook v. State,* 544 N.E.2d 1359, 1363 (Ind.1989). Here, the jury was instructed to limit its use of the exemplar for the purpose of determining the weight of McGraw's testimony.

Second, McGraw's testimony and the admission of the exemplar constituted cumulative evidence. Before the State called McGraw to testify and admitted the exemplar, it presented the testimony of Theresa Worl, J.R.'s seventh grade English teacher. Worl testified that she was "very familiar" with J.R.'s handwriting, which she described as "very sloppy, irregular, immature." Record, p. 646. The State showed Worl the letters admitted into evidence by Lockhart and asked whether, in her opinion, the letters were in J.R.'s handwriting. Worl responded that the writing in the letters was "not like [J.R.'s] handwriting at all.... The signature is definitely not the way [J.R.] signs his name." Record, p. 647.

Lockhart concedes that lay witnesses are permitted to examine the exhibits and give their opinion as to the authenticity. *See* Evid. R. 901(b)(2). Here, Worl testified that she was familiar with J.R.'s handwriting because she taught him English. Because Worl did not acquire her familiarity with J.R.'s handwriting for purposes of this litigation, her opinion was proper. *Id.* Therefore, because Worl already testified that the letters admitted into evidence by Lockhart were not written by J.R., McGraw's testimony based on a comparison between the letters and the handwriting exemplar constituted cumulative evidence.

As a result of these two factors, we conclude that the impact of the handwriting exemplar on the jury was not of sufficient weight to require reversal. *See Lannan v. State,* 600 N.E.2d 1334, 1341 (Ind.1992).

## V.

The fifth issue for our review is whether the evidence was sufficient to support Lockhart's class C felony conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Washington v. State,* 441 N.E.2d 1355, 1358 (Ind.1982). Rather, we look to the evidence favorable to the verdict, along with any inferences reasonably drawn therefrom. *Vest v. State,* 621 N.E.2d 1094, 1095 (Ind.1993). If there is evidence of probative value from which a reasonable trier of fact could infer that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Id.*

The offense of child molesting is established by I.C. § 35–42–4–3(b) which provides:

"A person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony."

I.C. § 35–42–4–3(b). Lockhart's class C felony conviction relates to the incident in which he fondled J.R.'s penis while he and J.R. were sitting under a blanket. Lockhart argues the evidence established that he "simply touched [J.R.'s] penis." Appellant's brief, p. 17. Lockhart claims there was no evidence to support the finding that he touched J.R.

with the intent to arouse or satisfy sexual desires.

 Contrary to Lockhart's contentions, the intent to arouse or satisfy sexual desires may be inferred from evidence that the accused intentionally touched a child's genitals. *Short v. State,* 564 N.E.2d 553, 559 (Ind.Ct.App.1991). Thus, intent may be inferred from the defendant's conduct and the natural and usual sequence to which such conduct reasonably points. *Id.; Warrick v. State,* 538 N.E.2d 952, 955 (Ind.Ct.App.1989); *see Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992), *reh'g denied* (holding that intent may be established by circumstantial evidence).

 Here, Lockhart touched J.R.'s penis and rubbed it for approximately five minutes while the two were seated under a blanket. J.R. was under twelve years old at the time. Lockhart, who testified on his own behalf, offered no non-incriminating explanation of why he would touch J.R.'s penis. Because the intent to arouse or satisfy one's sexual desires may be inferred from the natural and usual sequence to which Lockhart's conduct reasonably points, the evidence is sufficient to support the finding that Lockhart intended to arouse or satisfy his sexual desires when he touched J.R. *See Short,* 564 N.E.2d at 559. Therefore, the evidence is sufficient to support the jury's finding that Lockhart committed child molesting, a class C felony, beyond a reasonable doubt. *See Vest,* 621 N.E.2d at 1095.

## VI.

 The final issue is whether the sentence was unreasonable. A sentence determination is within the discretion of the trial court. *Duvall v. State,* 540 N.E.2d 34, 36 (Ind.1989). On review, we will not revise a sentence authorized by statute unless the sentence is "manifestly unreasonable" in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B).

 When the court enhances a sentence or imposes consecutive sentences, it must prepare a statement to indicate its rationale for such a sentence. I.C. § 35–38–1–

3. The statement must identify all significant aggravating and mitigating circumstances, identify specific facts from which to find the existence of each circumstance, and provide a demonstration that a balancing between all circumstances has been considered. *Id.* Section 35–38–1–7.1 sets forth the aggravating factors which the trial court may consider in enhancing a sentence or in imposing consecutive sentences. Even a single aggravating circumstance will support an enhanced sentence and the imposition of consecutive sentences. *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988); *Spivey v. State,* 638 N.E.2d 1308, 1312 (Ind.Ct.App. 1994). Ordinarily, a single aggravating circumstance should not be used both to impose an enhanced sentence and consecutive sentences. *Staton v. State,* 640 N.E.2d 741, 743 (Ind.Ct.App.1994). Only where the single aggravating circumstance is particularly egregious should it be used for both purposes. *Id.*

The presumptive sentence for a class B felony conviction is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. I.C. § 35–50–2–5. The presumptive sentence for conviction of a class C felony is four years with not more than four years added for aggravating circumstances or not more than two years subtracted for mitigating circumstances. I.C. § 35–50–2–6. In its sentencing order, the trial court articulated the following aggravating circumstances: (1) the violation of Lockhart's probation conditions, (2) Lockhart's prior criminal history, (3) Lockhart's need for correctional or rehabilitative treatment best achieved in a penal institution, (4) imposition of a reduced sentence would depreciate the seriousness of the crime, (5) the victim's age, (6) the risk of transmitting HIV, and (7) the violation of a position of trust.

 Lockhart claims the trial court failed to articulate sufficient aggravating circumstances from which to impose enhanced and consecutive sentences. While the trial court improperly found several factors to

constitute aggravating circumstances,[5] we must remand the cause for a new sentencing hearing on a ground not specifically addressed by Lockhart.

The State contends that the trial court erroneously reduced Lockhart's sentence. The trial court sentenced Lockhart to four years for the class C felony, with four years added for aggravating circumstances, and ten years for each of the class B felonies, with ten years added for each because of aggravating circumstances, all to be served consecutively. The trial court then reduced the total sixty-eight year sentence in accordance with I.C. § 35–50–1–2, which provides that:

> "the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions *arising out of an episode of criminal conduct* shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

I.C. § 35–50–1–2 (emphasis added). The presumptive term for a class A felony, the felony one class higher than the most serious of which Lockhart was convicted, is thirty years. I.C. § 35–50–2–4. As a result, the trial court reduced the total sentence to thirty years.

■ An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2; *see Tedlock v. State*, 656 N.E.2d 273, 275–276 (Ind.Ct.App.1995). An episode of criminal conduct exists where the conduct is such that a complete account of one charge cannot be related without referring to details of the other charge. *Reynolds v. State*, 657 N.E.2d 438, 440–441 (Ind.Ct.App.1995).

■ Based upon these principles, we hold that the trial court improperly found Lockhart's molestations of J.R. to constitute an "episode of criminal conduct" and, thereby, erroneously reduced the sentence in accordance with the statute. Lockhart's convictions arise out of four separate offenses which can be related without referring to the details of the other. *See Tedlock*, 656 N.E.2d at 276. Lockhart committed four distinct acts of molestation against the victim at different times. That the molest involved the same child each time does not make all four transactions a single criminal episode. *Id.* Accordingly, the trial court erred by reducing the sentence.

■ Although the trial court has broad discretion in sentencing, it must act within statutorily prescribed limits. *Niece v. State*, 456 N.E.2d 1081, 1084 (Ind.Ct.App. 1983). A sentence which is contrary to, or violative of, the penalty mandated by the applicable statute is an illegal sentence. *Id.* When the sentence imposed by the trial court is found to be improper, it is the general if not unanimous rule that the trial court has the power to vacate the illegal sentence and impose a proper one. *Williams v. State*, 494 N.E.2d 1001, 1004 (Ind.Ct.App.1986); *see Devaney v. State*, 578 N.E.2d 386, 389 (Ind.Ct. App.1991) (holding that it is the duty of the appellate courts to bring illegal sentences into compliance even if the correction subsequently increases the sentence). Imposition of the corrected sentence does not run afoul of the prohibition against double jeopardy. *Id.*

The application of I.C. § 35–38–1–7.1 is only required when the defendant engages in

---

5. The fourth aggravator is not proper because the fact that a reduced sentence would depreciate the seriousness of the crime may not be used to support an enhanced sentence. *See Walton v. State*, 650 N.E.2d 1134, 1137 (Ind.1995) (holding that this fact only supports a refusal to reduce the presumptive sentence, which was not under consideration). The fifth aggravator is not appropriate because a fact which comprises a material element of the crime may not also constitute an aggravating circumstance to support an enhanced sentence. *See Shackelford v. State*, 622 N.E.2d 1340, 1346 (Ind.Ct.App.1993). Because the trial court merely indicated that the victim was under the age of twelve without particularizing the circumstances warranting consideration of his age as an aggravator, the trial court improperly considered this circumstance. *Id.* The sixth aggravator is inapplicable because the record must demonstrate that Lockhart has HIV, knew he had the virus, and received risk counseling to constitute an aggravating circumstance. *See* I.C. § 35–38–1–7.1(b)(8)(A)–(C); *White v. State*, 647 N.E.2d 684, 689 (Ind.Ct.App.1995). These factors were not demonstrated by the record.

an "episode of criminal conduct." Because Lockhart's actions do not constitute an "episode," the sentence originally imposed by the trial court contravened the statute and is an illegal sentence. *See Niece,* 456 N.E.2d at 1084. Accordingly, we remand this cause to the trial court with instructions to impose a statutorily authorized sentence.

For the foregoing reasons, we affirm Lockhart's convictions, reverse his sentence, and remand this cause for the imposition of a new sentence.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HOFFMAN and BAKER, JJ., concur.